UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **SWIFT & COMPANY LLC,**<br><br>*Plaintiff,*<br>v.<br><br>**POLIMARKET LLC,**<br><br>*Defendant,* | **COMPLAINT FOR DAMAGES BASED ON COPYRIGHT INFRINGEMENT**<br><br>Demand for Jury Trial |

Plaintiff SWIFT & COMPANY LLC, for its complaint against Defendant Polimarket LLC, d/b/a Beauty Bridge, alleges upon personal knowledge as to its own conduct, and on information and belief based on the investigation of Plaintiff's counsel, as to all other conducted alleged herein, as follows.

## I. INTRODUCTION

1.      This is a case about copyright infringement under 17 U.S.C. §§ 101 et seq. and 505 et seq. arising from Defendant Polimarket LLC's unauthorized copying, display, and distribution of two (2) copyrighted photographs owned by Plaintiff SWIFT & COMPANY LLC, in violation of the Copyright Act and in total disregard of Plaintiff's rights that were used to sell baby products on Defendant's website.

## II. THE PARTIES

2.      Plaintiff SWIFT & COMPANY LLC ("SWIFT") is a California company with its principal place of business at 3103 17th Street, Santa Monica, California 90405. SWIFT is an image-centric media company, founded and operated by Elizabeth Waterman ("Waterman") (formerly Waugh), and who serves as its managing member. Waterman is an American fine art photographer whose work explores transformation, identity, and contemporary culture. In

1

addition to her fine art practice, Waterman also earns a living through commercial product photography, applying her distinctive visual style to brand imagery and advertising. By written agreement, SWIFT controls the copyright and causes of action for the Photos at issue. Accordingly, SWIFT has standing to pursue claims for infringement of the Photos.

3. Defendant Polimarket LLC, d/b/a Beauty Bridge ("Defendant" or "BB") is a company organized under the laws of New Jersey (NJ business ID: 0600212774) which maintains a commercial storefront at 639 Passaic Ave, Nutley, New Jersey 07110 and can be served here through its registered agent for service, Apiradee Kate Pienpuck, who is also its managing member according to New Jersey Department of the Treasury Division of Revenue & Enterprise Services.

4. Whenever in this complaint it is alleged that Defendant committed any act or omission, it is meant that Defendant's principals, vice-principals, officers, directors, agents, servants, directors, executives, management, or employees, subsidiaries, or affiliates committed such act or omission and that at the time such act or omission was committed, it was done with the full authorization, ratification or approval of Defendant or was done in the routine normal course and scope of employment of Defendant's principals, vice-principals, officers, directors, executives, management, agents, servants, or employees.

### III. JURISDICTION AND VENUE

5. This is a civil action for copyright infringement under the Copyright Act of 1976 (the "Copyright Act") and 17 U.S.C. §§ 101 *et seq*. and 505 *et seq*.

6. This Court has original subject matter jurisdiction over all claims pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1338 (copyrights).

7. This Court has personal jurisdiction over Defendant because it transacts business in this District, with its headquarters only a few miles from the District across the Hudson River in Nutley, New Jersey. Defendant availed itself of the privileges of conducting business in this District and the State of New York and incurred benefits from infringement, including selling products directly in the District and on information and belief, selling products in the District directly related to the infringed Photos at issue, such that this Court's assertion of jurisdiction over Defendant does nothing to offend traditional notions of fair play and due process.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and 35 N.Y.C.P.L.R. §§ 302(a)(1)-(3) because Defendant (1) committed copyright infringement (2) in and expressly aimed at the forum state of New York (3) and caused harm in this District to Plaintiff.

## IV. FACTUAL ALLEGATIONS

### A. The Importance of US Copyright and Bundle of Rights

9. Copyright is the legal title to intellectual property that allows creators of original works, such as photographs, to protect their exclusive right to economically exploit those works.

10. Respecting and defending the financial value and exclusive exploitation rights of creators' copyrighted works is a bedrock of U.S. democracy, considered so important that the Founders expressly provided for it in the Constitution, granting Congress the power "[t]o promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries." U.S. Const. Article I, Section 8. "Copyright law encourages people to create original works and thereby 'ultimately serves the purpose of enriching the general public through access to creative works.'" *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 526 (1994).

3

11. The United States Supreme Court found that by "establishing a marketable right to the use of one's expression, copyright supplies the economic incentive to create and disseminate ideas." *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 558 (1985).

12. Section 106 of the Copyright Act grants copyright owners the exclusive rights to exploit the economic value of their works; it prohibits the unauthorized reproduction, creation of derivative works, distribution, public performance, and public display of copyrighted works and provides for monetary damages when these rights are infringed.

**B. Plaintiff's Business and the Photos at Issue**

13. Throughout her career, Waterman has created numerous high-value photographs, including iconic works that have generated significant revenue through sales and publishing. In the marketplace, professional photography commands substantial monetary value.

14. Waterman created the Photos for a commercial project for Mustela and retained the copyright of the Photos.

15. A copy of the two (2) Photos at issue (the "Photos") are shown here:



4



16.     Plaintiff generates income from licensing fees from Waterman's works, as well as from the sale of authorized fine art prints. These works remain protected and commercially valuable intellectual property.

17.     Plaintiff licenses its works using a rights-managed model, typically limited in scope, duration, and medium, i.e. 1-year licenses for one photo often range up to $9,000 per photo for commercial advertising of products.

18.     Plaintiff is currently the lawful owner of all rights, title, causes of action and interest in the Photos, including the copyright.

19.     Plaintiff holds these rights by operation of law and through written assignment.

20.     The Photos were registered by Waterman through Black + Gold Corporation with the U.S. Copyright Office under Registration No. VA 2-116-845 with an effective registration date of June 7, 2018, and Black + Gold Corporation assigned the copyright in the Photos to SWIFT.

21. Plaintiff never authorized or licensed the Photos to Defendant or its principals for any purpose.

**C. Defendant's Wrongful and Infringing Conduct**

22. Defendant owns and operates a store front and e-commerce beauty and skin care products company that sells products, including products that are shown in the Photos, including on information and belief for actual sales in the District. It operates a website at https://www.beautybridge.com/ and a blog at https://blog.beautybridge.com/ where it features products that are advertised and bought by consumers in the United States and in the District.

23. While Defendant's blog contains a disclaimer ("*Image Disclaimer: All product images at the blog have been sourced from the respective brands' social media networks. They either belong to the brand or beauty bloggers as mentioned in the watermarks where shown*"), Plaintiff has no record of ever granting Defendant or Mustela third party rights to license the Photos for advertising and selling products without a license.

24. In or about July 2025, Plaintiff first discovered that Defendant publicly displayed the two (2) Photos at the following URL, https://blog.beautybridge.com/beauty/10-essential-baby-products-for-your-bundle-of-joy with a screenshot of the unauthorized use attached as Exhibit A, with each Photo designated with a **red arrow →**.

25. Defendant exploited the Photos for commercial purposes and to sell its products, Mustela baby wipes and Mustela baby shampoo.

26. On August 1, 2025, Plaintiff notified Defendant of its objection to the unauthorized uses of the Photos via customercare@beautybridge.com, the public email address that Defendant requests customer service inquiries and questions. Plaintiff demanded in this cease and desist the removal of the Photos from the infringing display or proof of a license.

6

27. Defendant ignored the cease and desist, but clearly received the cease-and-desist email because the Photos were taken down from Defendant's site sometime in August 2025.

28. Since then, Plaintiff has made repeated efforts to resolve the matter without litigation, but Defendant refused to respond or acknowledge the claim.

29. Upon information and belief, Defendant did not inadvertently publish the Photos, but rather selected and uploaded the Photos to enhance the visibility of its brand and commercial offerings and sell products. In doing so, infringed Plaintiff's exclusive rights under the Copyright Act.

30. Defendant's principal owners are experienced commercial operators who run a successful e-commerce skin and healthcare products business. Upon information and belief, they clearly understand the value of branding, promotional imagery, and proprietary creative content, and have enforced their own rights in such assets when necessary.

31. Defendant secured the trademark for Beauty Bridge to protect its trademark and brand which is evidence that it protected its brand.  See https://tsdr.uspto.gov/#caseNumber=77298178&caseSearchType=US_APPLICATION&caseType=DEFAULT&searchType=statusSearch (last checked September 17, 2025).

32. Given its experience operating a business that sells cosmetics that routinely use creative works for promotion and advertising, Defendant's principals were aware, or at minimum should have been aware, of Plaintiff's rights and of its own obligations under the Copyright Act.

33. Defendant's failure to obtain a license by asking Mustela for Plaintiff's contact information (instead of just pirating the Photos), demonstrates a willful disregard for Plaintiff's rights.

34. Without the benefit of discovery, Plaintiff is unable to fully and accurately account for all uses Defendant has made of the Photos.

35. By using Plaintiff's copyrighted Photos for advertising purposes without a license, permission, or any legal justification—and with full knowledge that such authorization was required by law—Defendant deprived Plaintiff of the opportunity to negotiate and secure a reasonable commercial license fee, as Plaintiff routinely does in the ordinary course of licensing Plaintiff's works.

36. Defendant's unauthorized commercial use of these high-value commercial Photos undermines Plaintiff's ability to control the licensing and market for the Photos, dilutes its exclusivity, and diminishes its value.

37. Unable to resolve its claim against Defendant, Plaintiff has been forced to initiate litigation, incurring additional and unnecessary legal costs.

38. By exploiting Plaintiff's copyrighted Photos without a license, permission, or legal excuse—and with knowledge that such authorization was required by law—Defendant has willfully infringed Plaintiff's rights in violation of the Copyright Act and caused damages in an amount to be determined at trial.

39. Waterman created and licensed each Photo for $3,350 for a limited commercial use license under a rights-managed model with no sublicensing rights.

40. Upon information and belief, Defendant BB generated substantial revenue from the unauthorized use of Plaintiff's Photos through the sale of these products in the District, directly tied to the display of the Photos on Defendant's website.

41. The fair market value of a rights-managed license is not dictated by what BB might prefer to pay after the infringement has occurred. Instead, it is determined under the

"willing buyer/willing seller" standard, which evaluates the objective market price of the actual use of the copyrighted work at the time of infringement.

42. Plaintiff will further establish through discovery that Defendant generated significant revenue as a direct result of its Infringing Use of the Photos. This includes revenue from product sales that Defendant unjustly retained.

43. Because 17 U.S.C. § 504(b) permits recovery of both actual damages and infringer's profits, Plaintiff will demonstrate a clear causal connection between the infringing uses, the revenue derived from those infringements, and the monetary remedy sought under the Act—none of which is speculative or arbitrary.

44. Plaintiff is entitled to actual damages under 17 U.S.C. § 504(b), including both revenue generated from the infringement and the fair market value of a hypothetical license for each infringing use of its Photos. These are recognized and accepted forms of actual damages under copyright law.

45. Whether BB would have actually negotiated with Plaintiff or agreed to Plaintiff's price is irrelevant—the availability of hypothetical-license damages does not depend on an actual licensing transaction. Courts recognize that the absence of a real-world agreement does not preclude recovery of damages based on what a willing buyer and seller would have agreed to at the time of infringement.

46. Hypothetical-license damages assume, rather than require, the existence of a willing buyer and seller. The term "hypothetical" itself makes clear that damages may be awarded even in the absence of an actual license.

47. Plaintiff's actual damages are measured by established fair market rates for licensing comparable works. These rates are determined by Plaintiff's licensing history, invoice

for the Photos (which may include cost of production), and fees paid by licensees for similar uses of copyrighted works, which Plaintiff has commanded as much as $9,000 for a one-year license to sell products.

48. The calculation of a reasonable licensing fee for Defendant's infringing use must account for industry-specific factors, including the type of use, size of reproduction, distribution medium, and circulation.

49. Alternatively, Plaintiff may elect to recover statutory damages for the Infringing use of the Photos pursuant to 17 U.S.C. § 504(c).

50. BB knew or should have known that its use of the Photos violated Plaintiff's rights upon receiving a cease-and-desist.

## V. CAUSES OF ACTION

### COUNT 1

### Infringement of Copyright (17 U.S. Code §§ 106, 501)

51. Plaintiff repeats and realleges each and every allegation set forth in the preceding paragraphs of this Complaint.

52. Plaintiff alleges, upon information and belief, that Defendant BB knowingly committed direct copyright infringement, and profited from the unauthorized reproduction and distribution and display of the Photos, and that Defendant's actions constitute direct copyright infringement under the Copyright Act, 17 U.S.C. § 101 et seq.

53. Plaintiff alleges that Defendant BB committed copyright infringement with actual knowledge of the infringement or reckless disregard for Plaintiff's rights. As a result, Defendant BB's infringement was willful, intentional, and undertaken with conscious disregard for Plaintiff's exclusive rights.

54. As a direct result of Defendant BB's acts of copyright infringement, Plaintiff has suffered damages in an amount to be determined at trial.

55. Due to its unauthorized use of the Photos, Defendant BB's obtained direct and indirect profits it would not have otherwise realized but for its infringement of Plaintiff's rights. Plaintiff is therefore entitled to disgorgement of Defendant BB's profits directly and indirectly, in an amount to be established at trial.

56. Plaintiff is informed and believes, and thereon alleges, that Defendant BB's copyright infringement, as alleged above, was willful and intentional, making it subject to enhanced statutory damages under 17 U.S.C. § 504(c)(2) of up to $150,000 per willful infringement or, alternatively, $30,000 per infringement under § 504(c)(1). Plaintiff will elect between actual damages and statutory damages at the appropriate stage of litigation, as required by law.

57. Defendant BB's infringement of Plaintiff's copyrights warrants injunctive relief, as Defendant BB's will continue engaging in infringing activities involving the Photo.

58. Defendant BB's conduct has caused, and any continued infringing conduct will continue to cause, irreparable injury to Plaintiff, unless enjoined by this Court.

59. Plaintiff has no adequate remedy at law to fully compensate for the ongoing harm caused by Defendant BB's infringement. Accordingly, under 17 U.S.C. § 502, Plaintiff is entitled to a permanent injunction prohibiting Defendant BB's and all persons acting in concert with it from further infringing Plaintiff's exclusive copyrights in the Photo.

60. Plaintiff is entitled to its costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505, as a prevailing party for the infringement claim.

## VI. JURY TRIAL DEMANDED

61. Pursuant to Fed. R. Civ. P. 38(b), Plaintiff respectfully demands a trial by jury of all the claims asserted in this Complaint so triable.

## VII. RELIEF REQUESTED

62. WHEREFORE, Plaintiff respectfully requests that the Court enter judgment on its behalf adjudging and decreeing that:

   a. For an injunction providing: "Defendant Polimarket LLC, d/b/a Beauty Bridge shall be and hereby is enjoined from directly or indirectly infringing Plaintiff's rights under federal or state law in copyrighted photos, whether now in existence or later created, that are owned or controlled by Plaintiff ("Plaintiff's Photos"), including without limitation by using social media, Internet embedding technology, or any online media distribution system to reproduce (i.e. download) any of Plaintiff's photos, to distribute (i.e. cause to be displayed) any of Plaintiff's copyrighted photos, or to make any of Plaintiff's photos available for distribution to the public, except pursuant to a lawful license or with the express authority of Plaintiff. Defendant also shall destroy all physical (i.e., printed) copies of any of Plaintiff's photos in Defendant's possession, as well as any of Plaintiff's Photos that Defendant has downloaded onto any computer hard drive or server."

   b. For Defendant to be required to account for all profits, income, receipts, or other benefits derived by Defendant as a result of their unlawful conduct.

   c. For Plaintiff to be awarded either: (i) the actual damages Plaintiff has sustained and Defendant's profits, gains, or advantages of any kind attributable to Defendant's infringement of Plaintiff's copyrighted Photos pursuant to 17 U.S.C. § 504(b), or

　　　statutory damages, including enhanced damages for willful or reckless infringement, pursuant to 17 U.S.C. § 504(c).

d. For Plaintiff to be awarded Plaintiff's costs and expenses incurred in bringing this action, including all reasonable attorneys' fees incurred herein, pursuant to 17 U.S.C. § 505 et. seq.

e. For Plaintiff to be awarded pre- and post- judgment interest from the time of the infringement.

Dated: September 17, 2025

　　　　　　　　　　　　　　　　　　　　Respectfully Submitted,

　　　　　　　　　　　　　　　　　　　　DUNCAN FIRM, PA

　　　　　　　　　　　　　　　　　　　　By: */s/ James H. Bartolomei III*
　　　　　　　　　　　　　　　　　　　　James H. Bartolomei III(jb7747)
　　　　　　　　　　　　　　　　　　　　Email: james@duncanfirm.com
　　　　　　　　　　　　　　　　　　　　809 W. 3rd Street
　　　　　　　　　　　　　　　　　　　　Little Rock, Arkansas 72201
　　　　　　　　　　　　　　　　　　　　Telephone: (501) 228-7600
　　　　　　　　　　　　　　　　　　　　Fax: (501) 228-0415

　　　　　　　　　　　　　　　　　　　　*Attorneys for Plaintiff*
　　　　　　　　　　　　　　　　　　　　*SWIFT & COMPANY LLC*